ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

Attorneys for Plaintiff
NICOLE CALAGNO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE CALAGNO, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> RITE AID CORPORATION; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No: 4:20-cv-05476-YGR <br><br> Hon. Yvonne Gonzalez Rogers <br><br> **PLAINTIFF NICOLE CALAGNO'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION** <br><br> **[28 U.S.C. § 1447]** <br><br> Date:  October 20, 2020 <br> Time:  2:00 p.m. <br> Place:  Courtroom 1, 4th Floor <br><br> Complaint Filed: June 1, 2020 <br> Removal Filed:   August 6, 2020 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................... 1

II. DEFENDANT HAS NOT MET ITS BURDEN TO PROVE AN AMOUNT IN CONTROVERSY SUFFICIENT TO ESTABLISH CAFA DIVERSITY JURISDICTION .................................................................................................................. 3

    A. Defendant ignores controlling case law to insist on improperly including statutory fines and penalties that are not requested and are legally impossible for Plaintiff to recover. ...................................................................... 3

    B. Defendant's allegations and calculations regarding restitution and disgorgement of profits are based on a more-than-doubled statute-of-limitations period and are grossly inflated. ............................................................ 5

    C. The Complaint does not seek punitive damages under the CLRA, which are not requested or warranted as currently pleaded. .................................................. 8

    D. The amount in controversy is far below the $5,000,000 required under CAFA, and the inclusion of attorneys' fees does not help Defendant cross or even get near the jurisdictional threshold. ........................................................ 11

III. CONCLUSION .................................................................................................................. 12

<mark type="sidebar">KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861</mark>

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                                                                      **Page(s)**

*Abrego Abrego v. The Dow Chemical Co.*,
    443 F.3d 676 (9th Cir. 2006) ............................................................................................. 3

*Bell v. Preferred Life Assur. Soc.*,
    320 U.S. 238 (1943) ....................................................................................................... 10

*Brown v. Allstate Ins. Co.*,
    17 F. Supp. 2d 1134 (S.D. Cal. 1998) ............................................................................. 4

*Burk v. Med. Sav. Ins. Co.*,
    348 F. Supp. 2d 1063 (D. Ariz. 2004) ............................................................................ 9

*Cazares v. Household Fin. Corp.*,
    2005 U.S. Dist. LEXIS 39222 (C.D. Cal. July 26, 2005) ............................................... 5

*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) .................................................................................. 11

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir. 2003) .......................................................................................... 5

*Geller v. Hai Ngoc Duong*,
    2010 U.S. Dist. LEXIS 129023 (S.D. Cal. 2010) ........................................................... 9

*Gibson v. Chrysler Corp.*,
    261 F.3d 927 (9th Cir. 2001) .................................................................................... 9, 10

*Greene v. Harley-Davidson, Inc.*,
    965 F.3d 767 (9th Cir. 2020) .......................................................................................... 3

*Hardt v. Chrysler Group LLC*,
    2015 U.S. Dist. LEXIS 187386 (C.D. Cal. June 15, 2015) .......................................... 11

*Herremans v. BMW of N. Am., LLC*,
    2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) ............................................... 5

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) .................................................................................... 1, 3

*Libhart v. Santa Monica Dairy Co.*,
    592 F.2d 1062 (9th Cir. 1992) ........................................................................................ 2

*Lowdermilk v. United States Bank Nat'l Assoc.*,
    479 F.3d 994 (9th Cir. 2007) .......................................................................................... 3

*Marshall v. Ford Motor Co.*,
    2017 U.S. Dist. LEXIS 53935 (E.D. Cal. Apr. 7, 2017) .............................................. 10

*Molnar v. 1-800-Flowers.com, Inc.*,
    2009 U.S. Dist. LEXIS 131768 (C.D. Cal. Feb. 23, 2009) ............................................ 8

*Petkevicius v. NBTY, Inc.*,
    2017 U.S. Dist. LEXIS 43636 (S.D. Cal. Mar. 24, 2017) ............................... 8, 9, 10, 11

*Victorino v. FCA U.S. LLC*,
    2016 U.S. Dist. LEXIS 151398 (S.D. Cal. Nov. 1, 2016) .............................................. 8

*Yumul v. Smart Balance, Inc.*
    733 F. Supp. 2d. 1117 (C.D. Ca. 2010) .................................................................................. 6

**Federal Statutes**

28 United States Code
    § 1332 ................................................................................................................................. 1
    § 1447 ................................................................................................................................. 1

**State Cases**

*Chern v. Bank of Am.*,
    15 Cal. 3d 866 (1976) ........................................................................................................ 4

*Clark v. Superior Court*,
    50 Cal.4th 605 (2010) ........................................................................................................ 8

*Kizer v. County of San Mateo*,
    53 Cal.3d 139 (1991) ....................................................................................................... 10

*Veera v. Banana Republic, LLC*,
    6 Cal.App.5th 907, (2016) ................................................................................................. 8

*White v. Ultramar, Inc.*,
    21 Cal. 4th 563 (1999) ..................................................................................................... 11

**State Statutes**

California Business & Professions Code
    § 17200 ........................................................................................................................... 4, 5
    § 17208 ............................................................................................................................... 5
    § 17500 ..................................................................................................................... 3, 4, 5
    § 17535 ............................................................................................................................... 4
    § 17535.5 ............................................................................................................................ 4

California Civil Code
    § 1750 ................................................................................................................................. 5
    § 1770 ............................................................................................................................... 10
    § 1780 ................................................................................................................................. 8
    § 1782 ............................................................................................................................... 10
    § 1783 ................................................................................................................................. 5
    § 3294 ............................................................................................................................... 11

Code of Civil Procedure
    § 338 ................................................................................................................................... 5

**Rules**

California Rules of Court,
    Rule 9 ................................................................................................................................. 6

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

I.  **INTRODUCTION AND SUMMARY OF ARGUMENTS**

Defendant's liabilities to the putative class are not trivial. But they also are nowhere near the $5,000,000 needed to establish CAFA jurisdiction under 28 U.S.C. § 1332(d). The amount-in-controversy analyses under CAFA do not simply sweep in ***all imaginable*** potentially recoverable damages, fines, penalties, restitution, attorneys' fees and costs, and punitive damages. That is especially so when, as here, certain categories of relief never were sought or requested or are not even available under the Complaint's allegations. Defendant cannot establish removal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions."[1] Yet that is what Defendant is trying to do here.

In proposing its grossly inflated estimate of the amount in controversy for CAFA removal purposes, Defendant completely misconstrues the Complaint and the relief requested. For a second time, Defendant attempts to include criminal fines and civil penalties that Plaintiff does not and, as a matter of law, cannot seek. Defendant ignores the reality that these statutory damages are not available to Plaintiff as a private citizen, and thus are not recoverable or at stake here.

Defendant next argues that the Complaint is vague regarding the time period at issue. Defendant uses that mischaracterization of the allegations to provide a wildly inaccurate and grossly inflated gross-sales figure to represent the amount of restitution that is at stake. Defendant's purported restitution calculation, which commences on January 1, ***2011 rather than*** on April 6, ***2016***, erroneously includes sales for more than five years before the statute-of-limitations cut-off. It is like a four-foot-tall person standing on a five-foot box and claiming to be nine feet tall. Adjusting Defendant's total sales number to the appropriate limitations period yields a number that is less than half of the $2.8 million Defendant claims.

Further, Defendant's reliance on its total ***sales*** figure amounts to an assertion that a full refund of the ***sale price*** of each bottle of Infants' acetaminophen ("Infants'") bought by putative class members during the class period is the appropriate measure of damages. That plainly is

---

[1] *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

REPLY BRIEF ISO MOTION TO REMAND        1        CASE NO. 4:20-CV-05476-YGR

incorrect. The purchasers got their acetaminophen. Plaintiff does not claim that the Infants' that the class members purchased had zero value and plainly does not seek reimbursement of the full purchase price. Rather, Plaintiff contends that Defendant's unfair and misleading sales and marketing practices caused consumers to pay more than they should have paid for that amount of acetaminophen by purchasing the higher-priced Infants' versus the lower-priced and medically-identical Children's acetaminophen ("Children's"). Thus, the appropriate and obvious measure of restitution is the difference in the per-ounce price between Infants' and Children's multiplied by the number of ounces bought by Plaintiff and putative class members during the class period. That necessarily is but a fraction of the total sales figure that Defendant provides. And it still requires a greater-than-50% reduction to correct for Defendant's overstated limitations period.

Falling well short of meeting the jurisdictional threshold, Defendant erroneously argues that punitive damages also should be included in determining the amount in controversy. Defendant once again misconstrues the Complaint, which does not make a claim for or even mention punitive damages. In fact, Plaintiff has not even made a claim for money damages that are a predicate for an award of punitive damages under the Consumers Legal Remedies Act. Further, the Complaint is devoid of any allegations of oppression, fraud, or malice and of corporation ratification. Thus, as currently pleaded, the allegations do not support an award of punitive damages, and Plaintiff is not entitled to them. Those speculative and unavailable sums are not properly included in the amount in controversy.

Lastly, even if one were to accept Defendant's proposed attorneys'-fee calculation as equaling 25% of the gross recovery, Defendant does not come close to meeting the $5,000,000 amount-in-controversy threshold required for this Court to exercise jurisdiction under CAFA. Where there is doubt as to the right of removal, federal jurisdiction should be rejected.[2]

/ / /

/ / /

/ / /

---

[2] See, e.g., *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1992).

## II. DEFENDANT HAS NOT MET ITS BURDEN TO PROVE AN AMOUNT IN CONTROVERSY SUFFICIENT TO ESTABLISH CAFA DIVERSITY JURISDICTION

Contrary to Defendant's assertion, it is not Plaintiff's burden to put forth evidence to show that the amount in controversy is less than the required $5,000,000. As the Ninth Circuit has explained, CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction.[3] Thus, invoking CAFA did not relieve Defendant of its burden to prove by a preponderance of the evidence that the amount-in-controversy requirement has been met.[4]

Further, "CAFA's requirements are to be tested by consideration of real evidence *and the reality of what is at stake in the litigation*, using reasonable assumptions underlying the defendant's theory of damages exposure."[5] Removal cannot be based on Defendant's mere "speculation and conjecture" or unreasonable assumptions.[6] With little supporting evidence regarding restitution and only speculation and conjecture about damages that Plaintiff does not and, as to some damages, cannot even seek, Defendant has failed to establish the amount in controversy required for CAFA diversity jurisdiction.

### A. Defendant ignores controlling case law to insist on improperly including statutory fines and penalties that are not requested and are legally impossible for Plaintiff to recover.

In its Opposition, Defendant continues to misconstrue the allegations actually pleaded in the Complaint and asserts erroneously, for a second time, that statutory fines and penalties are at stake in the litigation. But Plaintiff plainly does not seek and has not requested criminal fines or civil penalties under the False and Misleading Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

---

[3] *Abrego Abrego v. The Dow Chemical Co*., 443 F.3d 676, 685-686 (9th Cir. 2006), holding that, **under CAFA, the burden of establishing removal jurisdiction remains**, as before, **on the proponent** of federal jurisdiction.

[4] *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771-772 (9th Cir. 2020) ("When federal jurisdiction is challenged and the complaint is silent about damages, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million,'" citing *Ibarra*, 775 F.3d at 1197.

[5] *Ibarra*, 775 F.3d at 1198 [emphasis added].

[6] *Id*. at 1199; *Lowdermilk v. United States Bank Nat'l Assoc*., 479 F.3d 994, 1002 (9th Cir. 2007).

Nor could she legally do so. The remedies available to private plaintiffs for FAL violations are limited to equitable relief under Cal. Bus. & Prof. Code § 17200.[7] Private relief under the FAL is limited to the filing of actions for an injunction (§ 17535). **Civil penalties are recoverable only by specified *public* officers** (§§ 17535.5, 17536).[8] Plaintiff is not a public officer, and thus is not entitled to recover civil penalties under the statute. Defendant ignores this reality and never even mentions the unavailability of these statutory damages.

Instead, Defendant erroneously argues that Plaintiff has expressly claimed $2,500 in statutory damages and cannot recant her allegations. But no such allegations exist. While the Complaint does illustrate the law's importance as a matter of public policy by reciting and quoting portions of the statute at Paragraph 39, *the Complaint is completely devoid of any requests for criminal fines or civil penalties*.[9]

Specifically, under the first cause of action for violations of the FAL, Plaintiff seeks only injunctive relief and an award of attorneys' fees.[10] *There is no mention whatsoever of statutory damages.* Similarly, the *Prayer for Relief also does not contain a request for criminal fines or civil penalties* under the FAL or any other statute.[11] Plaintiff has not put any such penalties at issue in this case.

Thus, there is no basis for Defendant's attempt to include potential criminal fines or civil penalties that Plaintiff has not sought and cannot legally recover. No such penalties are at stake in this litigation, and they are not properly included in Defendant's calculation of the amount in controversy.

/ / /

/ / /

---

[7] *See, e.g., Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998) (holding that (while "§ 17500 provides only for criminal penalties, individuals may seek remedy for violations of § 17500 through § 17200").

[8] *Id. See also Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976) (holding that Cal. Bus. & Prof. Code, **§ 17500 does not authorize the recovery of damages by private individuals**).

[9] *See* Dkt. No. 1-1, Exhibit A, ¶¶ 38-48 and Prayer for Relief.

[10] *Id*., ¶¶ 47-48.

[11] *Id*., Prayer for Relief.

**B.   Defendant's allegations and calculations regarding restitution and disgorgement of profits are based on a more-than-doubled statute-of-limitations period and are grossly inflated.**

Defendant exaggerates its numbers by misconstruing the Complaint and asserting incorrectly that the timeframe at issue is vague and not well defined. Mischaracterizing and perhaps ignoring the factual allegations that provide a clear time period of April 2016 to the present[12], Defendant erroneously argues that Plaintiff has put everything from 2011 to the present at issue. Defendant bases its argument on the Complaint's historical-background discussion of the FDA's change in regulations for liquid acetaminophen for infants. It would be like a plaintiff in a securities fraud case discussing the events that led to the enactment of the Securities Act of 1933 and the defendant in the case claiming that that meant the plaintiff was seeking securities fraud damages going back to 1933. The result is that Defendant provides a wildly inaccurate and inflated restitution number that includes more than nine years of sales covering the period from January 2011 to the present rather than the period from April 2016 to the present that Plaintiff actually sought.[13]

Without justification, Defendant appears simply to ignore the well-established statute-of-limitations periods for Plaintiff's claims, which are as follows:

1. Violations of the False and Misleading Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* – **Three year statute of limitations** under Code of Civ. Proc. § 338(a)[14];

2. Violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* – **Four year statute of limitations** under Bus. & Prof. Code §17208[15]*;* and

3. Violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* – **Three year statute of limitations** under Civ. Code § 1783.[16]

---

[12] *Id.*, ¶¶ 17, 19, 20, 25.
[13] *See* Dkt. No. 24-1 (Himler Declaration), ¶ 2. While similarly inaccurate and also not encompassing the correct time period, Defendant also provided a total sales number for the period from January 2012 to the present. *Id.*, ¶ 3.
[14] *Cazares v. Household Fin. Corp.*, 2005 U.S. Dist. LEXIS 39222 (C.D. Cal. July 26, 2005).
[15] *Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003).
[16] *Herremans v. BMW of N. Am.,* LLC, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014).

Plaintiff's Complaint was filed on June 1, 2020.[17] During a normal year, that would result in a limitations period commencing on June 1, 2016. Under the tolling date set forth in Emergency Rule 9 of the California Rules of Court, however, the class period reaches back to *April 6*, 2016.[18] Plaintiff's Complaint and allegations comply with Emergency Rule 9, and the applicable limitations period for each cause of action under that rule is clear.[19]

Thus, Defendant's purported restitution figure of $2,800,000, which is based on Defendant's gross sales of Rite Aid-branded liquid Infants' acetaminophen in California from January *2011* to the present, is grossly inflated and cannot properly be used in calculating the amount in controversy. Indeed, Defendant's proposed restitution number encompasses ***more than double*** the amount of time covered by the longest limitations period. Based on the total sales numbers provided by Defendant for January 2011 to the present ($2,800,000)[20] and January 2012 to the present ($2,500,000)[21], it can be extrapolated that Defendant's sale of Infants' acetaminophen is roughly $300,000 per year. Using the appropriate time period from April 2016 to the present, which is approximately 4.5 years, the estimated total sales during the limitations period would be **$1,350,000** (4.5 years x $300,000/year). That is less than half of Defendant's $2.8-million figure.

Further, in addition to needing adjustment to reflect the appropriate time period, Defendant's total-sales number also does not properly represent the amount of ***restitution*** that is owed to Plaintiff and the putative class. The correct restitution amount would be calculated as the per-ounce price difference between the lower-priced Children's and the higher-priced Infants' – which Plaintiff alleges costs approximately two and a half times as much[22] – multiplied by the

---

[17] *See* Dkt. No. 1-1, Exhibit A.
[18] *Yumul v. Smart Balance, Inc.* 733 F. Supp. 2d. 1117, 11130 (C.D. Ca. 2010).
[19] Defendant also takes issue with the class definition using the phrase "applicable limitations period preceding the filing of the Complaint." This standard language often is used to encompass and reflect varying statute-of-limitations periods, and it in no way renders the Complaint vague. Indeed, the commonly-used phrase "statute of limitation*s*" would seem to embrace multiple periods.
[20] Dkt. No. 24-1, ¶ 2.
[21] *Id.*, ¶ 3.
[22] *See* Dkt. No. 1-1, Exhibit A, ¶ 3.

number of ounces of Rite Aid-branded Infants' that were sold in California. Thus, the restitution amount is not the total *sales* figure that Defendant asserts; rather, it is but a fraction of that adjusted $1,350,000 number.

While Defendant might argue to the contrary to bolster its numbers, Plaintiff never has contended that the Infants' acetaminophen product has zero value. At the heart of the case is Plaintiff's allegation that Defendant's Infants' and Children's have the same active ingredient in the same concentration and that "[n]o reasonable consumer would pay two and a half times as much per ounce and sometimes more to purchase Infants' acetaminophen over Children's acetaminophen unless he or she had been deceived into thinking that infants cannot safely take the Children's product."[23] At no point does Plaintiff allege that Infants' is without value. This case is about misleading marketing inflating a price. Second, Plaintiff never has asked for a full refund or rescission of her purchase of Defendant's Infants'. Nor would she. She received something of value for the money she spent. She seeks only the amount she overpaid.

Thus, the proper measure of the restitution that Plaintiff and the putative class are seeking is the difference in the per-ounce price between the Infants' product and the Children's product multiplied by the total number of ounces that Plaintiff and putative class members bought in California during the applicable time period. Applying the 60% overcharge percentage[24] to the $1,350,000 in total sales during the appropriate limitations period yields an overcharge and estimated restitution amount of **$810,000** (i.e., $1,350,000 x 0.60). That is significantly less – indeed, it is $1,990,000 or 71% less – than the $2.8-million figure that Defendant is claiming as it grasps for the mandated amount in controversy.

With greatly reduced total sales and restitution numbers adjusted for the appropriate limitations period, Defendant comes nowhere close to the $5,000,000 threshold required to

---

[23] Dkt. No. 1-1, Exhibit A, ¶ 5.

[24] If an ounce of Infants' costs *two and a half times as much as* an ounce of Children's, then an ounce of Infants' costs *150% more than* an ounce of Children's. Thus, if Children's costs $2.00 per ounce, then Infants', at two and a half times that price (or, equivalently, 150% more than the Children's price), would cost $5 per ounce. That means that the excess price – *the upcharge for the identical product* – is $3.00 per ounce, which is 60% (i.e., three fifths) of the total price.

establish CAFA jurisdiction. This holds true even if one were to include a punitive damages award, which Plaintiff does not seek, and even using 25% of the gross recovery as the basis for attorneys' fees. Defendant's numbers simply do not add up to anything close to $5,000,000.[25]

### C. The Complaint does not seek punitive damages under the CLRA, which are not requested or warranted as currently pleaded.

In a last-ditch effort to meet its burden and establish CAFA jurisdiction, Defendant attempts to include yet another category of relief not sought in the Complaint. Plaintiff does not seek or request punitive damages under the CLRA, nor is she entitled to those damages as the Complaint is currently pleaded. Defendant's inclusion of punitive damages in the calculation of the jurisdictional amount is clearly erroneous, speculative, and wholly unsupported by the Complaint's allegations.

It is well settled that punitive damages are not recoverable under the UCL or FAL.[26] As Defendant argues, however, a consumer seeking damages under the CLRA *may* recover punitive damages under the correct conditions.[27] Those conditions are absent here. While punitive damages are one of the various potential remedies in any case brought under the CLRA[28], ***they are not available unless the allegations in a complaint support*** an award of punitive damages.[29]

---

[25] Attorneys' fees of 25% over and above the $810,000 figure would create a total amount in controversy of $810,000 + $202,500 = $1,012,500. That is shy by $3,987,500. It is barely a fifth of the way to the jurisdictional minimum.

[26] *Veera v. Banana Republic, LLC*, 6 Cal.App.5th 907, 915, (2016) ("The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution."); see also *Clark v. Superior Court*, 50 Cal.4th 605, 610 (2010) (holding punitive damages not available under UCL).

[27] *Victorino v. FCA U.S. LLC*, 2016 U.S. Dist. LEXIS 151398, at *13 (S.D. Cal. Nov. 1, 2016), citing Cal. Civ. Code § 1780(a)(4).

[28] As a remedy for CLRA violations, Cal Civ. Code § 1780(a)(1) provides for actual monetary damages while Section 1780(a)(2), (3), (4), and (5) provide for injunctions, restitution, punitive damages, and other relief, respectively. Cal. Civ. Code § 1780(a).

[29] *See Molnar v. 1-800-Flowers.com, Inc.*, 2009 U.S. Dist. LEXIS 131768, at *5-7 (C.D. Cal. Feb. 23, 2009) (remanding case removed under CAFA after finding compensatory damages plus attorneys' fees of approximately $3,670,000 because defendant, which had the burden of establishing jurisdiction, did not provide any evidence or *attributes of the case* supporting a punitive damage award to bring the total amount in controversy to $5,000,000); *Petkevicius v. NBTY, Inc.*, 2017 U.S. Dist. LEXIS 43636, at *25-32 (S.D. Cal. Mar. 24, 2017) (**holding the inclusion of punitive damages in the amount in controversy not proper, notwithstanding the existence of the CLRA claim and prayer for punitive damages, when the FAC does not**

*(Cont'd)*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Although Defendant provides evidence of punitive damage awards in various other CLRA cases, ***it did not and cannot cite to any allegations in Plaintiff's complaint supporting such an award in this case.***

First, nowhere in the Complaint does Plaintiff request or even mention punitive damages.[30] More specifically, under Plaintiff's third cause of action for violations of the CLRA[31], the Complaint seeks only injunctive and equitable relief, with Plaintiff reserving her right to amend the Complaint to seek CLRA damages.[32] Plaintiff does not include punitive damages in her list of relief requested under the CLRA. Further, a request for punitive damages is completely absent from the Prayer for Relief.[33] Simply put, Plaintiff has not put punitive damages at issue.

Although "[i]t is well established that punitive damages are part of the amount in controversy in a civil action,"[34] "the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met."[35] Defendant's reliance on *Gibson* is unavailing. Without any analysis, the *Gibson* court merely noted, in one sentence, that the plaintiffs had not explicitly requested punitive damages, but the potential for such damages may still be considered for purposes of amount in controversy.[36] There, the court was concerned with analyzing whether punitive damages may be aggregated in a class action ***so that the totality*** of punitive damages, ***rather than the per-plaintiff share, constitutes the amount in***

---

**contain any allegations, conclusory or factual, that would support an award of punitive damages**).

[30] *See* Dkt. No. 1-1, Exhibit A.
[31] *Id.*, ¶¶ 60-74.
[32] *Id.*, ¶¶ 72-73.
[33] *Id.*, Prayer for Relief.
[34] *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).
[35] *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004); *see also Geller v. Hai Ngoc Duong*, 2010 U.S. Dist. LEXIS 129023, *2 (S.D. Cal. 2010) (**"Simply pointing out that Plaintiff is seeking punitive damages without proffering any evidence regarding the amount is insufficient to establish that the potential punitive damage award will more likely than not increase the amount in controversy . . ."**). **Here, Plaintiff is not even seeking punitive damages.**
[36] *Gibson*, 261 F.3d at 946.

*controversy*.[37]  Thus, *Gibson* does not stand for the proposition that punitive damages must be included in the amount in controversy when Plaintiff has not requested such relief.

Similarly, *Bell v. Preferred Life Assur. Soc.*[38], cited by the *Gibson* court and Defendant, does nothing to support or advance Defendant's argument.  In *Bell*, the court found that while plaintiff petitioner did not use the exact words to allege "gross fraud" as defined by the Alabama Supreme Court, the allegations in the complaint that the fraudulent representations "were false, and were known to be false when made and uttered with a reckless disregard for the truth" were sufficient to support a claim for punitive damages.[39]  Thus, *Bell* reinforces the standard that, ***for punitive damages to be counted toward the amount in controversy, the allegations in a complaint must support an award of punitive damages***.  Merely bringing a claim under the CLRA is insufficient.[40]

Second, the Complaint makes it clear that Plaintiff is not entitled to CLRA punitive damages.  "In California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages."[41]  Here, Plaintiff has made no request for CLRA damages.  For money damages under the CLRA, a plaintiff first must follow a notice process that permits a defendant to remedy any Section 1770 violation.[42]  Although Plaintiff complied with that requirement and sent Defendant a notice on May 21, 2020, the Complaint seeks only injunctive and equitable relief.[43]  Therefore, given that the case *as pleaded* lacks any potential for recovery of CLRA damages, ***punitive damages also are not a possibility and thus are not at issue***.[44]

---

[37] *Id*. at 945-947.
[38] *Bell v. Preferred Life Assur. Soc*., 320 U.S. 238 (1943).
[39] *Id*. at 241.
[40] *See Petkevicius*, 2017 U.S. Dist. LEXIS 43636, at *25-32; *Marshall v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 53935, at *4-6 (E.D. Cal. Apr. 7, 2017) (dismissing Plaintiff's request for punitive damages based on current allegations in the complaint).
[41] *Kizer v. County of San Mateo*, 53 Cal.3d 139, 147 (1991).
[42] Cal. Civ. Code § 1782.
[43] Dkt. No. 1-1, Exhibit A, ¶ 72-73.
[44] *See Marshall*, 2017 U.S. Dist. LEXIS 53935, at *6.

Further, the Complaint does not make even conclusory allegations that Defendant acted wantonly, recklessly, intentionally, maliciously, or oppressively, let alone make any factual allegations that would support such allegations.[45]  Punitive damages under the CLRA also must meet the requirements of California Civil Code § 3294, which sets out standards for when punitive damages are warranted.[46]  Nor does the Complaint allege that Defendant's wrongful conduct was committed, authorized or ratified by an officer, director, or managing agent of Defendant, as is required for punitive damages to be available under section 3294.[47]  The Complaint is completely devoid of allegations of oppression, fraud or malice.  Nor does it allege corporate ratification.  ***Thus, as pleaded, it does not support an award of punitive damages.***[48]

In sum, the Complaint does not mention punitive damages anywhere, not in the CLRA claim and not in the prayer for relief.  Plaintiff also makes no claim for CLRA damages, which are a prerequisite for CLRA punitive damages.  Further, although the CLRA allows for the recovery of punitive damages, the Complaint does not contain any allegations, conclusory or factual, that would be required for an award of punitive damages.  Thus, inclusion of punitive damages in the amount in controversy is not proper here.

**D.   The amount in controversy is far below the $5,000,000 required under CAFA, and the inclusion of attorneys' fees does not help Defendant cross or even get near the jurisdictional threshold.**

Despite Defendant's best efforts to conjure numbers that would establish jurisdiction under CAFA, the amount in controversy is nowhere near the required $5,000,000.  Even under Defendant's best-case scenario, i.e., (1) using the total sales figure of $1,350,000 instead of the more accurate restitution figure of $810,000, (2) even assuming an award of punitive damages

---

[45] *See generally Delarosa v. Boiron, Inc*., 275 F.R.D. 582, 592-93 (C.D. Cal. 2011) ("[I]n order for Plaintiff to receive punitive damages under the CLRA, Plaintiff must establish that Defendant was 'guilty of oppression, fraud, or malice. . . .'") (quoting Cal. Civ. Code § 3294(a)).

[46] *Hardt v. Chrysler Group LLC*, 2015 U.S. Dist. LEXIS 187386, *29 (C.D. Cal. June 15, 2015).

[47] *Id.*, at *9 ("In order to recover punitive damages from a corporation, Cal. Civ. Code § 3294(b) requires that the wrongful conduct must have been committed, authorized or ratified by an officer, director, or managing agent of the corporation."); *White v. Ultramar, Inc*., 21 Cal. 4th 563, 572 (1999) ("For corporate punitive damages liability, [§ 3294(b)] requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent.'").

[48] *See Petkevicius*, 2017 U.S. Dist. LEXIS 43636, at *29-31.

that Plaintiff has not requested, and (3) accepting an automatic 25% of the common fund or gross recovery as a reasonable estimate of attorneys' fees, ***Defendant still does not get near the jurisdictional threshold.***

**Using Total Sales Numbers Adjusted for the Maximum Statute of Limitations:**

| Damages | With Punitive Damages | Without Punitive Damages |
|---|---|---|
| Restitution | $1,350,000 | $1,350,000 |
| Punitive Damages | $1,350,000 | $ 0 |
| Attorneys' Fees | $675,000 | $337,500 |
| TOTAL | $3,375,000 | $1,687,500 |

**Using Restitution / Overcharge Numbers:**

| Damages | With Punitive Damages | Without Punitive Damages |
|---|---|---|
| Restitution | $810,000 | $810,000 |
| Punitive Damages | $810,000 | $ 0 |
| Attorneys' Fees | $405,000 | $202,500 |
| TOTAL | $2,025,000 | $1,012,500 |

Based on the meager evidence that Defendant has provided regarding its sale of Infants' acetaminophen, its numbers simply do not add up. The amount in controversy in this case is far below $5,000,000 and is insufficient to establish jurisdiction under CAFA.

**III. CONCLUSION**

Defendant has not met its heavy burden to establish that removal was proper. It has not come close. After adjusting Defendant's numbers to the appropriate limitations period, and even assuming full reimbursement of the purchase price as the proper measure for restitution, the estimated amount in controversy is far below the $5,000,000 required to establish CAFA diversity jurisdiction. Therefore, Plaintiff's motion should be granted and this action should be remanded.

|  |  |
|---|---|
| Dated: October 6, 2020 | Respectfully submitted,<br><br>**KELLER GROVER LLP**<br><br>By: /s/ *Eric A. Grover*<br>ERIC A. GROVER<br>RACHAEL G. JUNG<br>*Attorneys for Plaintiff* |