UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE CALAGNO,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>RITE AID CORPORATION, ET. AL.<br><br>　　　　Defendants. | Case No. 4:20-cv-05476-YGR<br><br>**ORDER: (1) GRANTING MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION; (2) DENYING AS MOOT STIPULATION RE: MOTION HEARING; (3) VACATING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 21, 36 |

　　　　Plaintiff Nicole Calagno brings this action against defendants Rite Aid Corporation ("Rite Aid") and Does 1 to 50, inclusive. Calagno alleges three causes of action, namely, violations of (1) the California False and Misleading Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq.*); (2) the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq*); and (3) the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq*).

　　　　Now before the Court is plaintiff's motion to remand for lack of subject matter jurisdiction on the sole basis that defendant Rite Aid has not demonstrated that the amount in controversy exceeds $5 million, in order to satisfy the diversity jurisdictional requirements under the Class Action Fairness Act, 28 U.S.C. section 1332(d). The parties have fully briefed the motion. (*See* Dkt. Nos. 21, 24, 29.)[1]

---

[1] Having preliminarily reviewed the parties' briefing, the Court determined that the motion was appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78, and vacated the oral argument that was set for October 20, 2020. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 728-29 (9th Cir. 1991).

Having carefully reviewed the pleadings, the papers submitted on each motion, and for the reasons set forth more fully below, the Court **GRANTS** plaintiff's motion for remand for lack of subject matter jurisdiction. The Court further **DENIES AS MOOT** the stipulation seeking to reschedule the motion hearing to coincide with the case management conference set for November 16, 2020, and **VACATES** this case management conference.

## I.   BACKGROUND

On June 1, 2020, Calagno filed this putative class action lawsuit against Rite Aid in the Superior Court of the State of California, County of Alameda, captioned *Nicole Calagno, individually and on behalf of a class of similarly situated individuals v. Rite Aid Corporation*, Case No. HG20064377 (the "State Court Action"). Calagno asserts individual and class claims against Rite Aid for unfair, deceptive, and fraudulent practice of marketing and selling Rite Aid brand liquid acetaminophen as two different, unique products – infant's acetaminophen and children's acetaminophen. (Dkt. No. 1-1, Ex. A ("Cmplt.")). In short, Calagno alleges that Rite Aid charged more for the version of acetaminophen marketed toward infants as compared to those marketed toward children, despite that both products are alleged to be identical. Calagno further alleges that Rite Aid owes Calagno and the proposed class restitution, and seeks to enjoin Rite Aid from engaging in the unlawful acts alleged in the complaint. Rite Aid removed the State Court Action to this Court on August 6, 2020, under the basis of federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA") 28 U.S.C. section 1332 (d). (Dkt. No. 1 (Removal)).

## II.   LEGAL STANDARD

"Federal courts are of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts are presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *Daimler Chrysler Corp v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)). Accordingly, there is a "strong presumption against removal jurisdiction" when evaluating a motion to remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The burden of establishing federal jurisdiction is upon the party seeking removal." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citation omitted). CAFA does not shift

the burden to establish subject matter jurisdiction of a removed putative class action; thus, that burden remains with the party seeking removal. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

Rite Aid argues that the court has jurisdiction under CAFA. CAFA grants district courts original jurisdiction of "any civil action in which the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action [of more than 100 putative class members] in which (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. §1332 (d)(2)(A).

"When measuring the amount in controversy, a court must assume that the allegations of the complaint are true, and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Gyorke-Takatri v. Nestle USA, Inc.*, No. 15-cv-03702-YGR, 2015 WL 6828258, at *3 (N.D. Cal. Nov. 6, 2015). The amount in controversy is "determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint . . . ." *Fritsch v. Swift Transp. Co. of Arizona*, 899 F.3d 785, 791 (9th Cir. 2018) *quoting Chavez v. JPMorgan Chase & Co.*, 888 F.3d 414-15 (9th Cir. 2018). The defendant must prove evidence that it is "more likely than not that the amount in controversy satisfies the jurisdictional amount requirement." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see also Fritsch*, 899 F.3d at 795 (requiring the defendant to prove by a preponderance of the evidence the amount in controversy exceeds the jurisdictional threshold).

A court must determine the appropriateness of removal "on the basis of the pleadings at the time of removal." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). The amount in controversy includes "all relief claimed at the time of removal to which plaintiff would be entitled if [they] prevail." *Fritsch*, 899 F.3d at 793; *see Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint").

### III. ANALYSIS

There is no dispute regarding the diversity of parties, and that the aggregate number of putative class members meets the 100 or greater threshold. The present issue is whether the CAFA amount-in-controversy threshold has been met.

Calagno asserts that Rite Aid has failed to meet the amount in controversy CAFA requirement of $5,000,000. Rite Aid contends that the requirement is satisfied upon consideration of: (1) potential statutory fines and penalties; (2) restitution and disgorgement calculations; (3) punitive damages; and (4) inclusion of attorneys' fees. The Court addresses each of these grounds in turn below.

#### A. Statutory Fines and Penalties

Rite Aid contends that the potential statutory fines and penalties it is facing based on these asserted state claims must be considered as part of satisfying the CAFA requirement. Under Cal. Bus. Prof. Code section 17500 *et seq.*, a violation for a corporation's false or misleading statement is punishable by imprisonment or by a fine "not exceeding two thousand five hundred dollars." Thus, Rite Aid contends that Calagno's allegation under the FAL satisfies the amount in controversy requirement of $5,000,000 due to the penalty fine of $2,500 multiplied by the proven distribution of at least 2,000 bottles of infants' liquid acetaminophen in California.

Rite Aid does not persuade. Private plaintiffs are limited to seeking equitable relief under section 17500. *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998); *see also Chern v. Bank of America*, 15 Cal.3d 866, 875 (1976) (holding section 17500 does not authorize recovery of damages by private individuals, as they are limited to the filing of actions for an injunction). Under the FAL, "[p]rivate relief is limited to the filing of actions for an injunction, and civil penalties are recoverable only by specified public officers." *Chern*, 15 Cal.3d at 875 (internal citations omitted).

Accordingly, as private plaintiff's may not recover the penalty fine, but rather are solely entitled to equitable relief under the FAL, the Court does not consider such statutory fines and penalties when determining whether the CAFA threshold is met.

**B.     Restitution and Disgorgement**

Calagno, individually and on behalf of a purported class, seeks remedy in the form of disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and losses caused by Rite Aid's alleged violations. (*See* Cmptl.) Here, Rite Aid advances two arguments for higher calculation figures: (1) that the time period for calculating restitution and disgorgement begin in 2011; and (2) that damage should be calculated on the full purchase price of the acetaminophen, and not merely the price differences between the otherwise two identical versions.

Neither of these bases persuade. First, with respect to the issue of timing, Rite Aid contends that the time frame was not sufficiently pled in the complaint, and that the Court should therefore calculate restitution from 2011 to present, applying the applicable period where the Food and Drug Administration ("FDA") changed regulations for liquid acetaminophen for infants. This argument fails, as the complaint only references the year 2011 in two paragraphs to identify action undertaken by the FDA. The complaint is otherwise replete with references to April 2016. (Cmplt. ¶¶ 17, 19, 20, 25). As pled, the complaint identifies the class period as reaching back to April 6, 2016, which is approximately in sync with the applicable statute of limitations period for the FAL, CLRA, and UCL. *See* Cal Code Civ. Proc § 338(a); Cal. Code Civ. Proc. §1783;  Cal. Bus. & Prof. Code § 17208.  Thus, the timeframe is appropriately limited to damages beginning from April 2016.

Second, Rite Aid's calculations based on the *full* purchase price of the acetaminophen are also without merit.[2]  As Calagno correctly notes, any damages calculation should be reduced to the per-ounce price difference between the lower-priced Children's acetaminophen and the higher-priced Infants' acetaminophen multiplied by the number of ounces of the Infants' brand that were sold in California, due to the fact that the putative class received *some* benefit of the use of the allegedly indifferent acetaminophen formulas.  Rite Aid cites no authority for the proposition that

---

[2] The Court notes that even accepting Rite Aid's calculations based on the *full* purchase price ($1,350,000), the CAFA $5,000,000 threshold is still not met, as discussed below.

5

the Court should consider the full purchase price instead of the price difference between two identical versions. The alleged overcharge percentage is 60%, reducing the estimated total sales of $1,350,000 to an estimated overcharge amount of $810,000. Thus, the Court calculates the restitution amount to be approximately $810,000.

### C. Punitive Damages

Rite Aid included punitive damages as part of its calculation to reach the $5,000,000 CAFA threshold. Rite Aid relies on *Greene v. Harley-Davidson, Inc.*, where that defendant cited four prior punitive damage awards under the CLRA to meet the amount in controversy requirement under CAFA. *Greene*, 965 F.3d 767, 769 (9th Cir. 2020). Specifically, the identification of prior cases involving the "same cause of action in which the juries awarded punitive damages based on the same or higher punitive damage ratios," demonstrated that it was reasonably possible to achieve the punitive damage amount in their own case. *Id*.

Here, Calagno does not seek punitive damages. Under the operative complaint, Calagno may only seek such punitive damages under the CLRA, as punitive damages are otherwise not recoverable under the UCL or FAL. (*See, e.g.*, *Veera v. Banana Republic, LLC.*, 6 Cal.App.5th 907, 915 (2016) ("[R]emedies available in a UCL or FAL action are generally limited to injunctive relief and restitution"); *see Clark v. Superior Court*, 50 Cal.4th 605, 610 (2010) (holding punitive damages not available under the UCL). Under the CLRA, punitive damages are only available if the allegations in a complaint support an award of punitive damages. *Petkevicius v. NBTY, Inc*., No. 3:14-cv-02616-CAB-(RBB), 2017 WL 1113295, * 9 (S.D. Cal. March 24, 2017) (holding punitive damages can be included in the amount in controversy if "the party with the burden presents evidence of a possible punitive damage award, usually in the form of punitive damage awards in factually analogous cases"); *see Killion v. AutoZone Stores Inc.*, No. 5:10-cv-01978-JHN-AGRx, 2011 WL 590292, at *2 (C.D. Cal. Feb. 8, 2011) ("Defendants cite two cases . . . in which punitive damages were awarded, but make no attempt to analogize. . . Simply citing these cases merely illustrate that punitive damages are possible but in no way shows that it is likely in this case. Therefore, Defendants' inclusion of punitive damages in the calculation of the jurisdictional amount is speculative and unsupportive"). Despite this, the CLRA claim appears as

6

1   pled to only request injunctive and equitable relief. There is otherwise no require for punitive

2   damages anywhere in the operative complaint. Thus, the Court concludes that no amount for

3   punitive damages should be considered in the CAFA threshold determination, given that no such

4   amounts are pled.

5   Even if the Court were to consider potential punitive damages, despite not being so pled in

6   the complaint, in calculating the CAFA requirement, such an amount would not impact the

7   Court's calculations and analysis. In general, courts have applied a 1:1 multiplier to the economic

8   damages to punitive damages to determine the amount of damages at issue under CAFA. *Greene*,

9   965 F.3d at 772. Applying the above restitution value, the possible punitive damage amount

10   would equal $810,000. As will be discussed, this amount, even in connection with the other

11   amounts, is not close to the necessary $5,000,000 threshold under CAFA.

### D. Attorneys' Fees

Calagno seeks attorneys' fees, which are included in determining the amount in controversy under CAFA. *See Fritsch*, 899 F.3d at 795 ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount in controversy requirement is met"). "[T]he defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence . . . ." *Id.* at 796.

Here, Rite Aid and Calagno agree to the inclusion of attorneys' fees at the 25% benchmark. *See id.* at 796 (demonstrating the reasonableness of assuming an attorney fee as 25% of the amount in controversy). Based on both parties acceptance of the 25% standard, the calculation of attorneys' fees would equal $202,500 in the model excluding punitive damages. Even with punitive damages, the amount is only $405,000.

### E. Calculations

In summation, the Court provides two summary calculations, based on whether punitive damages are included in the model or not:

| Damages | With Punitive Damages | Without Punitive Damages |
|---|---|---|
| Restitution | $810,000 | $810,000 |
| Punitive Damages | $810,000 | $0 |

7

| Attorneys' Fees | $405,000 | $202,500 |
|---|---|---|
| TOTAL | $2,025,000 | $1,012,500 |

Both of these calculations fail to reach the $5,000,000 amount in controversy requirement for jurisdiction under CAFA.[3]

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to remand for lack of subject matter jurisdiction.  The Court further **DENIES AS MOOT** the stipulation seeking to reschedule the motion hearing to coincide with the case management conference set for November 16, 2020, and **VACATES** this case management conference.

The Clerk of the Court is directed to close the case and remand to the Alameda County Superior Court.

This Order terminates Docket Numbers 21 and 36.

**IT IS SO ORDERED.**

Dated: November 13, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[3] Even assuming the best figures for Rite Aid based on the *full* purchase price, the Court calculates that restitution ($1,350,000), punitive damages ($1,350,000), and the corresponding attorneys' fees ($675,000) only total $3,375,000.  Such a figure still does not satisfy the $5,000,000 CAFA threshold.

8